UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**          Case No. 8:17-CR-120-T-17 TGW

v.

**DARWIN TOAREZ MENDOZA**
_____/

## SENTENCING MEMORANDUM

COMES NOW, the Defendant, Mr. DARWIN TOAREZ MENDOZA, by and through undersigned counsel, and files this sentencing memorandum in support of a reasonable sentence. As grounds in support thereof, Mr. Mendoza shows as follows:

Mr. Mendoza, 28, was born and raised in Ecuqdor. He and his siblings were raised in poverty; and though raised in a caring environment by his parents he often lacked adequate food and proper clothing. His family home did not have running water or electricity. His Father worked in construction be passed away 14 years ago. Mr. Mendoza mother is a homemaker and assists his wife and children with some meals since his arrest. The defendant was able to attend school till the 5th grade

Prior to incarceration, Mr. Mendoza supported his two children along with his common law wife. He was able to pay the electricity and water to live with 15 other people in a home but could not afford to purchase his own for his family.

While traditionally, boat mules are brought up through the ranks of criminal organizations, they are now often recruits. This is the instant case. Mr. Mendoza hired along with his co-defendants to move kilograms of cocaine. Factually, Mr. Mendoza was paid by others in the conspiracy. He had no equity interest in the drugs. He had no role in planning the criminal scheme and absolutely no role in the ultimate distribution of the cocaine. He did not recruit any other participants; he had little knowledge of the scope of the broader conspiracy. was less culpable than the logistics people, the distributors, the purchaser of the cocaine, the seller of the

cocaine, or any other unindicted co-conspirators. He was essentially a laborer on the boat.

Mr. Mendoza was not a member of any drug trafficking organization. When approached, he knew that it was "foolish" to go on the proposed voyage. As a day-laboring fisherman with a family to care for, in a country lacking a functioning legal system, police, health care and other basic services for the poor, he risked everything and received very little payment.

**Factors (i) - (iv): understanding, planning, authority, discretion**

The criteria in factors (i) through (iv) focus on the defendant's understanding, planning/organizing function, decision-making authority, responsibility and discretion. Mr. Mendoza exercised none of these attributes. He was simply one of three hired hands whose presence was necessary for the moving of a small vessel over a stretch of ocean. Just one leg in many, the contraband would travel. Obviously, he possessed some understanding of the illegal purpose of the voyage, but it is unlikely that he knew any further details concerning the overall operation—such as the owner of the vessel or the ultimate destination of the cocaine. He was recruited on the street, by low-level service- providers, who dealt with intermediaries within a larger drug trafficking organization. Mr. Mendoza was not involved in acquiring drugs, organizing the drug smuggling operation, or planning the route of the voyage. He had zero decision-making authority, leadership responsibility, or operational discretion.  In short, Mr. Mendoza's role was "perform[ing] a limited function in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(A). As the Application Note states, "[A] defendant who is convicted of a drug trafficking offense whose participation in that offense was limited to transporting or storing drugs . . . *may receive an adjustment under this guideline*." *Id.* (emphasis supplied).

**Factor (v): "benefit" from the crime**

Further determinative of Mr. Mendoza's sentence is factor (v) added to Application Note 3(C): "the degree to which the defendant stood to benefit from the criminal activity." Mr. Mendoza was to receive only a small, one-time cash payment completely unrelated to the large value of the drugs transported. At any rate, a miniscule, non-proprietary "benefit" of this type clearly meets the guideline's

requirement for a mitigating role adjustment. As the guideline states, "A defendant who is simply being paid to perform certain tasks *should be considered* for an adjustment under this guideline." U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

**Conduct "integral" or "indispensable" to the offense**

As noted by the Commission in issuing Amendment 794, defendants historically have been improperly denied mitigating role adjustments because their conduct was "integral" (essential, indispensable) to the offense. In Amendment 794, however, the Commission clarified beyond all doubt that the fact that a defendant's role was essential to the offense "does not alter the requirement . . . that the court must assess the defendant's culpability relative to the average participant in the offense." U.S.S.G. Amendment 794. "The fact that a defendant performs an essential or indispensable role in the criminal activity *is not determinative*. Such a defendant *may receive an adjustment under this guideline* if he or she is substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(C) (emphasis supplied).

**Culpability compared to the "average participant"**

The fundamental requirement for a low-end sentence is that, "based on the totality of the circumstances," the defendant's role in the offense "makes him substantially less culpable than the average participant in the criminal activity." U.S.S.G. §3B1.2 App. N. 3(A). According to the Sentencing Commission's Historical Notes to the 2015 Amendments, "average participant" refers narrowly to the defendant's "co-participants in the case at hand." In a conspiracy involving the immediate presence of only three persons, the concept of "average participant" is elusive. Even in these narrow circumstances, however, it is clear that Mr. Mendoza and the rest of the crew were "substantially less culpable" than other participants. He was not directly connected with the larger drug organization, did not plan or organize the voyage, did not procure the go-fast, did not load the cocaine, did not provision the vessel with supplies, and did not provide the GPS navigating device. In all such activities, Mr. Mendoza had no say. His role was that of a temporary hand hired by higher-ups to perform a limited, short-term set of menial tasks in exchange for a small, one-time

cash payment unrelated to the value of the drug cargo. Even in the narrow "case at hand,"

In the spirit of justice, Mr. Mendoza is even less culpable when considered under a *true* "totality of the circumstances," which included the higher-level drug-trafficking conspirators who were actually responsible for Mr. Mendoza's presence aboard the Go Fast boat. The *true* "average participants" were those who created, organized, and managed an international drug-trafficking organization; sourced and obtained hundreds of kilograms of cocaine at wholesale; paid for the construction of the specialized but disposable boat; arranged for the maritime transport of large quantities of cocaine to recipients in distant countries; and continue to reap huge profits from the overall enterprise oblivious of the fate of minor, disposable players such as Mr. Mendoza.

### Variance pursuant to *United States v. Booker and* 18 U.S.C. § 3553(a)

Mr. Mendoza's guideline range--without the mitigating role adjustment--is low-end 135 months. The offense to which he has pleaded guilty carries a statutory minimum penalty of 10 years, but he is eligible for a lesser sentence by virtue of the U.S.S.G. §5K1.1 motion if filed by the government. Under the advisory guidelines regime in place since *United States v. Booker*, 125 S. Ct. 738, 756 (2005), this Court is required to impose a sentence that is *reasonable*—that is, sufficient but not greater than necessary to meet the statutory purposes of sentencing set forth in 18 U.S.C § 3553(a). Given the facts of this case, Mr. Mendoza submits that a reasonable punishment would be a total term of incarceration not exceeding 120 months.

### Application of 18 U.S.C. § 3553(a)

Mr. Mendoza regrets his commission of a serious federal crime and understands the need for punishment. He submits, however, that the nature and circumstances of his offense, and his personal history and characteristics, weigh in favor of a sentence significantly less than his low-end guidelines range of nearly 12 years in prison.

Mr. Mendoza, whose desperation was such that he could not turn down a job that might require his being separated from his family, was shaped by circumstances that were manifestly *not* contemplated by the United States Sentencing Guidelines.

Mr. Mendoza came to adulthood, and later trying to start his own family, in lawless barrios where competing criminal gangs routinely restrict residents' movements, recruit their children, extort their businesses, and routinely engage in horrific acts of violence against anyone who defies their will. Neither as a poor child growing up or as an unskilled, illiterate adult supporting a family in a city with over 50 percent unemployment, has Mr. Mendoza known the level of opportunity available to the poorest in the United States. That circumstance must bear on the degree of blameworthiness for which he is held personally responsible.

**The purposes of sentencing**

Section 3553(a)(2) sets forth the purposes of sentencing, which can be summarized as:

1. (1) just punishment;
2. (2) deterrence;
3. (3) protection of the public; and
4. (4) rehabilitation.

Mr. Mendoza submits that each of these purposes would be achieved by a total sentence of 120 months.

**Just Punishment**

Mr. Mendoza's conduct, participating in an attempt to smuggle illegal drugs, was a violation of law and must be justly punished—constituting appropriate retribution while promoting respect for the law and demonstrating to the offender and to others the reprehensibility of the offense. In this case, since Mr. Mendoza has no history of violence, and no violence was involved in the offense, just punishment can be achieved with 120 months of incarceration. A sentence of 120 months will be particularly hard to bear in the case of an individual whose family members are outside the United States, and are unlikely to be able to visit him in prison.

**Deterrence – specific and general**

As for specific deterrence (i.e., specifically affecting Mr. Mendoza), little statistical data is available regarding recidivism rates in cases like this, in which the offender is located outside the United States and is subject to personal and economic

conditions that scarcely exist in this country. Added periods of incarceration beyond 120 months would be mere surplus—taxpayer-funded punishment for its own sake that returns no social benefit.

As for general deterrence: By any standard, 120 months in federal prison followed by summary deportation to a third-world country will surely be seen as severe punishment for an offense that took place entirely outside the United States and involved no weapons or violence.

### Protection of the Public

Other than, the general threat posed by the trade in illegal drugs, the safety and wellbeing of the public are not at stake here. Mr. Mendoza has no history of violence or of crimes against persons. There is no other indication that he possesses any danger to the public.

### Rehabilitation

Mr. Mendoza, reflecting on the wrong that he has done wishes to move forward, complete his punishment, and return to his family. Given his need for vocational skills, it is particularly unfortunate that (as an undocumented alien) he will not qualify for prison rehabilitative programs such as job training. In effect, the time he spends in prison will be "pure punishment"—a further reason for limiting his sentence to 120 months and permitting him to return to his family and such gainful employment as is available.

### The kinds of sentences available (and related costs)

Since in this case only incarceration (followed by deportation) is available, the cost of this punishment is a relevant consideration. At the rate of $34,770.00 per year (PSR ¶83), any incarceration beyond that which is necessary represents an unjustified expenditure of public funds. Mr. Mendoza submits that a total sentence of 120 months is sufficient to accomplish the goals of sentencing at a justifiable cost.

## CONCLUSION

For the reasons stated herein, Mr. Mendoza, respectfully urges this Court to impose a total sentence of 120 months. Such a sentence is reasonable in light of the advisory guideline range and the factors set forth at 18 U.S.C. § 3553(a).

DATED this 1st day of November 2017.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day, of November 2017, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to the following:

Natalie.adams@usdoj.gov

Respectfully submitted,

By: **/s/ Cynthia Hernandez**
Cynthia Hernandez, Esquire
Florida Bar No. 0010422
3030 N. Rocky Point Dr., Suite 150
Tampa, Florida 33602
Tel. (813) 841-2933
Fax (813) 864-6735
cjhernandezlaw@gmail.com
Attorney for Defendant